# EXHIBIT A

AAKASH DALAL
SBI# 792652E
215 BURLINGTON ROAD SOUTH
BRIDGETON, NJ 08302

LEGAL DOCUMENTS



CERTIFIED MAIL®

7020 3160 0001 7892 5896

  

FOREVER / USA    FOREVER / USA    FOREVER / USA

NEOPOST
07/27/2023
US POSTAGE  $007.12⁰



ZIP 08302
041M11297259

8/1/2023 3:24:37 PM
To:
Lert, Lert
Area Code:
**MPK0001**
ALT. Area Code:

Room ID:
**Research Rack**
Sender:

Item Alert:

Recipient Alert:

**70203160000178925896**



Label 7020316000017892589

META PLATFORMS, INC.
1 HACKER WAY
MENLO PARK, CA 9402

Aakash Dalal
SBI# 792652E
215 Burlington Road South
Bridgeton, NJ 08302
Plaintiff, *pro se*

| | |
|---|---|
| AAKASH DALAL, | SUPERIOR COURT OF NEW JERSEY |
| | ESSEX COUNTY VICINAGE |
| Plaintiff, | LAW DIVISION – CIVIL PART |
| Vs. | |
| | Docket No.: ESX-L-4262-23 |
| META PLATFORMS, INC., | |
| | **CIVIL ACTION** |
| Defendants. | **SUMMONS** |

From the State of New Jersey to the Defendant Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with a fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

/s/ Michelle M. Smith
Clerk of the Superior Court

DATED:        July 14, 2023
Name of the Defendant to Be Served:    **Meta Platforms, Inc.**
**Address of Defendant to Be Served:    1 Hacker Way, Menlo Park, California 94025**

ESSEX COUNTY - CIVIL DIVISION
SUPERIOR COURT OF NJ
465 MARTIN LUTHER KING JR BLVD
NEWARK                         NJ 07102
COURT TELEPHONE NO. (973) 776-9300
COURT HOURS  8:30 AM - 4:30 PM

                    TRACK ASSIGNMENT NOTICE

                    DATE:       JULY 05, 2023
                    RE:         DALAL AAKASH VS META PLATFORMS INC
                    DOCKET:     ESX L -004262 23

THE ABOVE CASE HAS BEEN ASSIGNED TO: TRACK 3.

DISCOVERY IS    450 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

THE PRETRIAL JUDGE ASSIGNED IS:   HON RICHARD T. SULES

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     001
AT:
(973) 776-9300 EXT 57110.

IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.

                    ATTENTION:
                              AAKASH DALAL
                              215 BURLINGTON ROAD SOUTH
                              SBI# 7926526
                              BRIDGETON              NJ 08302

JUGJACK



New Jersey Judiciary
Civil Practice Division
# Civil Case Information Statement (CIS)

Use for initial Law Division Civil Part pleadings (not motions) under Rule 4:5-1.
Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the
black bar is not completed, or attorney's signature is not affixed.

| For Use by Clerk's Office Only | | | | |
|---|---|---|---|---|
| Payment type ☐ check<br>☐ charge<br>☐ cash | Charge/Check Number | Amount<br>$ | Overpayment<br>$ | Batch Number |

| Attorney/Pro Se Name<br>Aakash Dalal | Telephone Number | County of Venue<br>Essex |
|---|---|---|

| Firm Name (if applicable)<br>N/A | Docket Number (when available)<br>L-4262-23 |
|---|---|

| Office Address - Street<br>#792652E, 215 Burlington Road South | City<br>Bridgeton | State<br>NJ | Zip<br>08302 |
|---|---|---|---|

| Document Type<br>Complaint | Jury Demand<br>☒ Yes   ☐ No |
|---|---|

| Name of Party (e.g., John Doe, Plaintiff)<br>Aakash Dalal, Plaintiff | Caption<br>Aakash Dalal v. Meta Platforms, Inc. |
|---|---|

| Case Type Number (See page 3 for listing)  606 | | |
|---|---|---|
| Are sexual abuse claims alleged? | ☐ Yes | ☒ No |
| Does this case involve claims related to COVID-19? | ☐ Yes | ☒ No |
| Is this a professional malpractice case? | ☐ Yes | ☒ No |
| If "Yes," see N.J.S.A. 2A:53A-27 and applicable case law regarding your obligation to file an affidavit of merit. | | |
| Related Cases Pending?<br>If "Yes," list docket numbers | ☐ Yes | ☒ No |
| Do you anticipate adding any parties (arising out of same transaction or occurrence)? | ☐ Yes | ☒ No |
| Name of defendant's primary insurance company (if known) | ☐ None | ☒ Unknown |

**The Information Provided on This Form Cannot be Introduced into Evidence.**

Case Characteristics for Purposes of Determining if Case is Appropriate for Mediation

Do parties have a current, past or recurrent relationship?  ☐ Yes  ☒ No
   If "Yes," is that relationship:
   ☐ Employer/Employee   ☐ Friend/Neighbor   ☐ Familial   ☐ Business
   ☐ Other (explain) _____

Does the statute governing this case provide for payment of fees   ☒ Yes   ☐ No
by the losing party?

Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition.

Do you or your client need any disability accommodations?   ☐ Yes   ☒ No
   If yes, please identify the requested accommodation:

Will an interpreter be needed?   ☐ Yes   ☒ No
   If yes, for what language?

**I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).**

Attorney/Self-Represented Litigant Signature: _____

# Civil Case Information Statement (CIS)

Use for initial pleadings (not motions) under *Rule* 4:5-1

## CASE TYPES

(Choose one and enter number of case type in appropriate space on page 1.)

### Track I - 150 days discovery

| | |
|---|---|
| 151 | Name Change |
| 175 | Forfeiture |
| 302 | Tenancy |
| 399 | Real Property (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | Book Account (debt collection matters only) |
| 505 | Other Insurance Claim (including declaratory judgment actions) |
| 506 | PIP Coverage |
| 510 | UM or UIM Claim (coverage issues only) |
| 511 | Action on Negotiable Instrument |
| 512 | Lemon Law |
| 801 | Summary Action |
| 802 | Open Public Records Act (summary action) |
| 999 | Other (briefly describe nature of action) |

### Track II - 300 days discovery

| | |
|---|---|
| 305 | Construction |
| 509 | Employment (other than Conscientious Employees Protection Act (CEPA) or Law Against Discrimination (LAD)) |
| 599 | Contract/Commercial Transaction |
| 603N | Auto Negligence – Personal Injury (non-verbal threshold) |
| 603Y | Auto Negligence – Personal Injury (verbal threshold) |
| 605 | Personal Injury |
| 610 | Auto Negligence – Property Damage |
| 621 | UM or UIM Claim (includes bodily injury) |
| 699 | Tort – Other |

### Track III - 450 days discovery

| | |
|---|---|
| 005 | Civil Rights |
| 301 | Condemnation |
| 602 | Assault and Battery |
| 604 | Medical Malpractice |
| 606 | Product Liability |
| 607 | Professional Malpractice |
| 608 | Toxic Tort |
| 609 | Defamation |
| 616 | Whistleblower / Conscientious Employee Protection Act (CEPA) Cases |
| 617 | Inverse Condemnation |
| 618 | Law Against Discrimination (LAD) Cases |

## Track IV - Active Case Management by Individual Judge / 450 days discovery

| | |
|---|---|
| 156 | Environmental/Environmental Coverage Litigation |
| 303 | Mt. Laurel |
| 508 | Complex Commercial |
| 513 | Complex Construction |
| 514 | Insurance Fraud |
| 620 | False Claims Act |
| 701 | Actions in Lieu of Prerogative Writs |

## Multicounty Litigation (Track IV)

| | |
|---|---|
| 271 | Accutane/Isotretinoin |
| 281 | Bristol-Myers Squibb Environmental |
| 282 | Fosamax |
| 285 | Stryker Trident Hip Implants |
| 291 | Pelvic Mesh/Gynecare |
| 292 | Pelvic Mesh/Bard |
| 293 | DePuy ASR Hip Implant Litigation |
| 296 | Stryker Rejuvenate/ABG II Modular Hip Stem Components |
| 299 | Olmesartan Medoxomil Medications/Benicar |
| 300 | Talc-Based Body Powders |
| 601 | Asbestos |
| 624 | Stryker LFIT CoCr V40 Femoral Heads |
| 625 | Firefighter Hearing Loss Litigation |
| 626 | Abilify |
| 627 | Physiomesh Flexible Composite Mesh |
| 628 | Taxotere/Docetaxel |
| 629 | Zostavax |
| 630 | Proceed Mesh/Patch |
| 631 | Proton-Pump Inhibitors |
| 632 | HealthPlus Surgery Center |
| 633 | Prolene Hernia System Mesh |
| 634 | Allergan Biocell Textured Breast Implants |
| 635 | Tasigna |
| 636 | Strattice Hernia Mesh |
| 637 | Singulair |
| 638 | Elmiron |

If you believe this case requires a track other than that provided above, please indicate the reason on page 1, in the space under "Case Characteristics".

**Please check off each applicable category**

☐ **Putative Class Action**        ☐ **Title 59**        ■ **Consumer Fraud**

Aakash Dalal
SBI# 792652E
215 Burlington Road South
Bridgeton, NJ 08302
Plaintiff, *pro se*

---

AAKASH DALAL,

                    Plaintiff,

Vs.

META PLATFORMS, INC.,

                    Defendant.

SUPERIOR COURT OF NEW JERSEY
ESSEX COUNTY VICINAGE
LAW DIVISION – CIVIL PART

Docket No.: *L-4262-23*

CIVIL ACTION

**COMPLAINT**

## JURISDICTION & VENUE

1.     The Superior Court of New Jersey has jurisdiction as this action is brought
pursuant to claims arising under New Jersey common law and the New Jersey
Consumer Fraud Act, <u>N.J.S.</u> 56:8-1 *et seq.*

2.     Venue in the Essex County Vicinage is proper pursuant to <u>R.</u> 4:3-2(a)(3) as the
Defendant does business in Essex County.

## PARTIES

3.     Plaintiff Aakash Dalal ("Plaintiff") is a resident of New Jersey.

4.     Defendant Meta Platforms, Inc. ("Meta"), formerly known as Facebook, Inc., is a
Delaware corporation with its principle executive offices at 1 Hacker Way, Menlo
Park, California 94025 that does extensive business in New Jersey, including in
Essex County, and with New Jersey government entities. Meta owns and operates
Facebook.com and various other websites and software applications.

## STATEMENT OF FACTS

### The Facebook, Inc. Consumer Privacy User Profile Class Action

5.     On December 22, 2022, the Hon. Vince Chhabria, U.S.D.J. of the United States

District Court for the Northern District of California preliminarily approved a

settlement in the class action lawsuit of In re: Facebook, Inc. Consumer Privacy

User Litigation, Case No. 3:18-md-02843-VC for $725 million. The class action

lawsuit raised claims for invasion of privacy, negligence, gross negligence, deceit,

breach of contract, breach of implied contract, and violations of state and federal

statutes.

6.     As a result of Plaintiff's use of Facebook.com, he was a member of the class in

the aforementioned lawsuit.

7.     On May 1, 2023, Plaintiff determined that the settlement was inadequate and

timely opted out of the settlement by sending letters via certified and regular U.S.

mail to the settlement administrator requesting exclusion from the class action.

### Plaintiff's Use of Facebook.com

8.     Defendant Meta's Facebook.com is a social networking website used by billions

of people throughout of the world to interact with friends and family members,

post images and videos, share information, such as political preferences, and

privately communicate with others.

9.     Plaintiff opened a Facebook.com account in September 2010 and was an active

user of Facebook. Plaintiff had dozens of Facebook "friends" and restricted his

privacy settings to ensure that his information and content, such as his religious

affiliation and political views, would be limited only to his Facebook friends.

Plaintiff also posted content on Facebook, including images and videos, and communicated with his friends through Facebook's messaging and communication system.

10. Information and content Plaintiff posted to his Facebook page that he intended would remain private has continued to this day to be unlawfully disseminated by Facebook to third parties, including app developers, Meta's business partners, and domestic and foreign government agencies.

11. Defendant Meta earned and continues to earn substantial revenue by misusing Plaintiff's private content and information.

12. In April 2023, after receiving notice of the class action settlement, Plaintiff discovered that Defendant Meta misused his content and information through December 22, 2022 and continues to misuse his content and information to this day.

13. Plaintiff did not consent to the dissemination of his private information and content to app developers, whitelisted apps, Facebook's business partners, or any other persons or organizations. Facebook falsely informed Plaintiff that it had a policy of sharply limiting the use of his sensitive information, while in reality, Facebook had no limits at all. Plaintiff would not have used Facebook and posted content to the website had he known that Facebook's statements were false and that it would transmit his content to tens of thousands of app developers and companies.

14. Defendant Meta in fact misused and continues to misuse Plaintiff's content and information by disseminating it to third party app developers, whitelisted app

developers, and its many business partners through the various means outlined below.

15.     As a result of Facebook's mass dissemination of the data of users' friends, third parties, including business and governments have been able to develop detailed dossiers on Plaintiff including information about his religious and political preferences and other sensitive matters.

**Meta Platform's/Facebook's Misuse of Plaintiff's Data**

16.     Defendant Meta's Facebook.com Statement of Rights and Responsibilities and Data Use Policy informs users that "You own all of the content and information you post on Facebook, and you can control how it is shared through your privacy and application settings."

17.     Beginning in 2007, Facebook users have been able to access applications, or apps, directly from Facebook to play video games, read news content, and stream videos. This interaction among Facebook, its users, and third-party apps is one of the primary ways by which Facebook has disseminated user information to third parties.

18.     When users accessed apps on Facebook, app developers were not merely able to obtain information about the users they were interacting with, but they were also able to obtain information about the users' Facebook friends that the users themselves had access to.

19.     From 2009 to 2015, tens of thousands of app developers operating on the Facebook platform were able to interact with users and obtain private information about users' friends. Facebook failed to disclose that even if users adjusted their

privacy settings to specify that only their friends would be permitted to view their information, this would not prevent app developers from obtaining it.

20.     In 2014, Facebook announced that it would restrict app developers and limit their access only to the information of the users who directly utilized the apps. Essentially, Facebook claimed to have denied third party app developers access to the information and content of the app users' friends. Despite this public pronouncement, Facebook, however, continued allow a preferred list of app developers to access the information of users' friends. Facebook designated these apps as "whitelisted apps" and secretly continued to give these apps special access to users' friends' information because of the significant revenue these apps generated for Facebook. Thousands of companies were "whitelisted" by Facebook, including Airbnb, Netflix, UPS, Salesforce, Lyft, and Spotify.

21.     Facebook further maintains a separate information sharing program with domestic and foreign companies that are Facebook's business partners, including Amazon, Microsoft, Sony, Samsung, Yahoo, Yandex, and others. Facebook outsourced to these business partners the time, labor, and money required to build Facebook's Platform on different devices and operating systems.

22.     Facebook shared users' private data with its business partners and those business partners in turn shared data with Facebook. Facebook made users' "friends only" information readily available to a broad swath of companies, including Apple, Samsung, AT&T, Sprint, T-Mobile, Verizon, Google, Huawei, Microsoft, Mozilla, LG, Amazon, and others.

23.     These partnerships were built on data reciprocity, as Facebook and its partners agreed to exchange information about users' activities with each other. Facebook gave business partners access not only to information of the user with whom the business partner interacted, but also access to information of that user's friends.

24.     Facebook never disclosed to Plaintiff or any other users that it shared and continues to share user information with its business partners.

25.     Facebook failed to act to prevent app developers, whitelisted app developers, and its business partners from misusing and further disseminating users' private information.  While Facebook had a purported policy of preventing app developers from using this information for purposes other than enhancing interaction between the app and the user, Facebook actually did nothing to enforce this policy.

26.     Facebook gave users the impression that their information was protected, while in reality tens of thousands of app developers were using it for other purposes. Facebook took no action to protect user information because its intent was solely on generating revenue from the access that it was providing.

## STATEMENT OF CLAIMS

### COUNT I:
### INVASION OF PRIVACY BY PUBLIC DISCLOSURE OF PRIVATE FACTS

27.   Plaintiff again alleges and incorporates by reference all previous paragraphs set forth above in this complaint.

28.   During and between September 2010 and present, Defendant Meta invaded Plaintiff's privacy by knowingly disclosed private facts about Plaintiff to the public—namely its whitelisted app developers and business partners—in a manner offensive and objectionable to a reasonable person.

### COUNT II:
### INVASION OF PRIVACY BY INTRUSION UPON SECLUSION

29.   Plaintiff again alleges and incorporates by reference all previous paragraphs set forth above in this complaint.

30.   During and between September 2010 and present, Defendant Meta invaded Plaintiff's privacy by knowingly intruding upon his private affairs, including content and information he posted with the reasonable belief that it would remain private, in a manner highly offensive to the ordinary reasonable person.

### COUNT III:
### NEGLIGENCE

31.   Plaintiff again alleges and incorporates by reference all previous paragraphs set forth above in this complaint.

32.   During and between September 2010 and present, Defendant Meta had a duty to handle its users' sensitive information with care. During this period, Plaintiff

entrusted Facebook with his sensitive information, but Facebook failed to use reasonable care to safeguard that information, giving third parties access to it without taking any precautions to constrain that access to protect Plaintiff privacy, despite assurances it would do so.

33.    Defendant Meta's conduct therefore constitutes negligence under New Jersey common law.

## COUNT IV:
## GROSS NEGLIGENCE

34.    Plaintiff again alleges and incorporates by reference all previous paragraphs set forth above in this complaint.

35.    During and between September 2010 and present, Defendant Meta had a duty to handle its users' sensitive information with care. During this period, Plaintiff entrusted Facebook with his sensitive information, but Facebook failed to use reasonable care to safeguard that information, giving third parties access to it without taking any precautions to constrain that access to protect Plaintiff privacy, despite assurances it would do so.

36.    Defendant Meta's conduct therefore constitutes gross negligence under New Jersey common law.

## COUNT V:
## FRAUD

37.    Plaintiff again alleges and incorporates by reference all previous paragraphs set forth above in this complaint.

38.     During and between September 2010, Defendant Meta misrepresented to Plaintiff
and other Facebook users that it safeguarded and protected their information.
Defendant Meta knew its representations regarding user data were false, as it
willfully disseminated Plaintiff's information to whitelisted app developers and its
business partners. Defendant Meta further intended that Plaintiff rely on its
misrepresentations, so that Plaintiff would generate more content, and therefore
generate more revenue for Facebook. Plaintiff reasonably relied upon Facebook's
representations and suffered damages, including the invasion of his privacy as a
result.

## COUNT VI:
## BREACH OF CONTRACT

39.     Plaintiff again alleges and incorporates by reference all previous paragraphs set
forth above in this complaint.

40.     During and between September 2010 and present, Defendant Meta and Plaintiff
entered into a contract whereby Defendant Meta agreed that Plaintiff "own[s] all
of the content and information [he] post[ed] on Facebook, and [he] can control
how it is shared through [his] privacy and application settings." Facebook
breached this promise when it disclosed, without Plaintiff's permission, his user
information to whitelisted apps and business partners, and without giving Plaintiff
the ability to prevent this disclosure. Plaintiff was damaged by the resulting
invasion of his privacy.

9

## COUNT VII:
### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

41.     Plaintiff again alleges and incorporates by reference all previous paragraphs set forth above in this complaint.

42.     During and between September 2010 and present, Defendant Meta owed Plaintiff an implied covenant of good faith and fair dealing in its contractual agreement with him regarding his use of Facebook.com. Defendant Meta, with a clear improper and bad motive, breached the implied covenant by misusing the information and content Plaintiff posted with the reasonable expectation, based on Defendant Meta's promises, that it would not be widely disseminated.

## COUNT VIII:
### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT

43.     Plaintiff again alleges and incorporates by reference all previous paragraphs set forth above in this complaint.

44.     During and between September 2010 and present, Defendant Meta knowingly and intentionally employed unconscionable commercial practices, specifically by unlawfully disseminating Plaintiff's private content and information, while falsely claiming to protect it, to third parties for profit thereby causing Plaintiff an ascertainable loss..

45.     Defendant Meta therefore violated the New Jersey Consumer Fraud Act, N.J.S. 56:8-2, and is liable for damages under N.J.S. 56:8-2.11 and N.J.S. 56:8-19.

## COUNT IX:
## UNJUST ENRICHMENT

46.     Plaintiff again alleges and incorporates by reference all previous paragraphs set

        forth above in this complaint.

47.     During and between September 2010 and present, Defendant Meta knowingly

        received a benefit—specifically, monetary gain—from app developers and third

        party business partners at the expense of Plaintiff by improperly disseminating

        Plaintiff's information and Defendant Meta's retention of that benefit without

        payment or compensation is unjust.

## DEMAND FOR RELIEF

ACCORDINGLY, Plaintiff petitions this Court for judgment as follows:

a)  Finding that Defendant Meta Platforms, Inc. committed the acts or omissions set forth in this Complaint;

b)  Finding that such acts or omissions constitute violations of the New Jersey Consumer Fraud Act, N.J.S. 56:8-2.

c)  Granting Plaintiff appropriate equitable relief, including preliminary and permanent injunctive relief barring Defendant from engaging in the tortious conduct and unconscionable commercial practices outlined in this Complaint;

d)  Granting Plaintiff compensatory damages in an amount to be determined by a jury;

e)  Granting Plaintiff treble damages in accordance with N.J.S. 56:8-19;

f)  Granting Plaintiff punitive damages of no less than $350,000;

g)  Granting Plaintiff nominal damages;

h)  Granting Plaintiff reasonable attorneys' fees, expenses, and costs in accordance with N.J.S. 56:8-19; and

i)  Affording Plaintiff any other relief deemed just and appropriate by the Court.

Aakash Dalal
Plaintiff, *pro se*

Dated:       June 19, 2023

## JURY TRIAL DEMAND

Plaintiff demands trials by a jury on all of the triable issues of this complaint, pursuant to New Jersey Court Rules 1:8-2(b) and 4:35-1(a).

Aakash Dalal
Plaintiff, *pro se*

Dated:         June 19, 2023

## RULE 4:5-1(b)(2) CERTIFICATION

I certify that Plaintiff in this matter has not initiated any other civil action in any court of this State against Defendant and is not now engaged in any arbitration proceeding against Defendant, nor is any other civil action or arbitration proceeding contemplated. I certify that Plaintiff is not aware of any other party who should be joined in this action at the current time.

Aakash Dalal
Plaintiff, *pro se*

Dated:         June 19, 2023

## DESIGNATION OF TRIAL COUNSEL
## (R. 4:5-1(c))

Plaintiff Aakash Dalal is hereby designated as trial counsel for this matter.

Aakash Dalal
Plaintiff, *pro se*

Dated:         June 19, 2023